Good morning and Happy New Year to all of you. I hope it will be a Year of hope and comfort and Maybe peace in some parts of the world Including Chicago All right, here we go The first case of the day is 14 2 9 7 7 and 14 3 5 7 3 Bonsetter vs. The City of Chicago and Mr. Herbert. Good morning Morning justices opposing counsel You know if you're looking for justice you're in the wrong court, I'm sorry judges The City of Chicago has a long-standing Storied and quite frankly disturbing Practices with respect to hiring For various city jobs The Discrimination against applicants for these city jobs has evolved to various forms of discrimination based upon various discriminatory factors As a result of the long and storied history of discrimination by the City of Chicago They Were required to enter into a Shackman Decree in 1972 that also evolved And became the Shackman Accord and as we will we have argued it also evolved into the 2010 hiring plan for the Chicago Police Department And when I talk about the City of Chicago's Chicago Police Department Many decades ago The Chicago Police Department implemented a policy where they required a certain height level to be Required that each applicant for the police department reach a or had a base level height It was determined that was a completely arbitrary standard and it was also determined that the reason that the height requirement was put into place was because The Irish police officers who were controlling of the police department at that time Wanted to keep the Italians off of the police department, and that's why they put the Italians are shorter than Irish They are apparently and more back then My ancestry is Irish, but I know a lot of Italians that are a hell of a beard my relatives. I do too. I do too, but but that fact does remain and the discriminating factor there was the Irish bosses that controlled the testing process wanted to Have a police department that was shaped in their own image and according to them They did not want to have the Italians involved in that now Forgive me, Mr. Herbert, but I'd like to start to talk about the Accord and as I read the Accord it does Seem to draw a distinction between the Shackman plaintiffs who are given the authority to enforce the terms of the Accord and job applicants like the plaintiffs here whom it only gives the authority to pursue claims of political Discrimination So what I'd like you to tell us if you would is where in the Accord are job applicants given the authority to file complaints regarding Inappropriate and I have inappropriate in quotes in my mind hiring criteria Well Your honor, it's it is inherent in the Shackman Accord which also Incorporates the hiring plan that there is no discriminatory There's no discriminatory effects can take place to job applicants The hiring or I'm sorry the Shackman Accord In which the city was bound to which is at issue here today that was created in 2011 or I'm sorry 2007 and then in 2011 the city was mandated to incorporate this hiring plan into the Shackman Accord and in the hiring plan Incorporated in the Shackman Accord it mandates that there is to be equal employment opportunity for all job applicants as well as Those that are currently employed that are going through a promotional process. It talks about how It is it prohibits political and or improper considerations for job applicants well, the complaint does say that the defendants failed to prohibit the consideration of improper considerations in the hiring process and among the laundry list of improper factors listed are Political considerations, but other than the Allegations as to what mr. Slowick was asked What types of political? consideration does the Complaints say were considered as to these plaintiffs because I don't see such allegations in the complaint Your honor and with due respect. We believe that Just as the discrimination has evolved throughout the police department so has the the the bases for discrimination well belief and proof or Evidence are very very different. So if you can, you know, give me Those allegations it would be very helpful As far as strictly political We would admit that with the exception of Slowick We don't have situations where Individuals were discriminated against because they were not part of the favored political party Isn't that the Shackman decree? That is the Shackman decree, but the Shackman Accord Expands upon that because the Shackman Accord recognizes that that the discrimination has changed throughout the process it is evolved and essentially Political cannot be viewed just in the narrow respect of a political party, whether it be the Daily Democrats or Republican look the emails that are attached To the complaint may show that there were inquiries by public officials as to a candidate status But how do they support the notion? That the city was actually using forbidden forbidden political criteria in hiring I Really am very puzzled as to what you believe these emails show Well, I don't know What we believe these emails show is that There was political influence imparted into the process With respect to one candidate and the political influence was made directly to The director of the Department of Human Resources for the city of Chicago. The inquiry into status constitutes a fracture? Well inquiry into status inquiry into the status of this individual was Disqualified and was given a second review. So that is that is he was given the second review Which none of our plaintiffs were given that and no one else that we know of was given that. Did they ask for it? I'm sorry. Did they ask for it? I'm sorry your honor. Did they ask for a second review? Yes, every one of our plaintiffs. They were all rejected. They were all rejected. The only one that got it was. As far as we know the only person that got it was this person that was the subject of these emails and in I think that leads to another good point is that Every one of our plaintiffs and we have not only our named plaintiffs But we have secured over 75 individuals that have been discriminated against for various reasons. Every one of those individuals requested a review of their Disqualification. The city of Chicago provides a review. They provide a hearing at the Department of Human Resources Wherein the city has the burden of showing that its disqualification Was in fact proper. Our clients, none of them were given the opportunity to challenge their disqualification. So is it your position then that even though there were not specific allegations that The federal court should review those rejections simply based on the fact that it was a negative employment decision because you don't have and I agree with my sister Judge Rovner. I don't I don't see where the allegation is there. As far as political goes? Yes. Well, it's it is clear with respect to the emails from the congressman and the in the aldermanic aide or the alderman Excuse me, Alderman Cullerton It's clear that that political influence was utilized in at least this one Particular instance and I think it's important to note that this was something. So you're referring to Slowick? No, I'm referring to the individual who is not a client of ours that was given the second review as a result of this email from the The political individuals, the congressman and the alderman. It's it's clear that that is direct political influence. Why is that political influence? If someone says how's so-and-so doing? It's not saying Do this or You know take another look or there'll be problems or or I don't know. Well, I think it's very similar to the Shackman Accord when it was put in place when Somebody would would make a phone call and say John Smith rang doorbells for our political party. I just want you to know that. Well, that's as different as night and day. How is someone doing vis-a-vis, this is one of ours. And I would just characterize it as it's not that the emails were not how is somebody doing? It was more along the lines of why is you know, what is the status of this individual and He understands that he was disqualified and he was given a second review. But that's why I'm confused about what your real allegations are because I just don't see any specific allegations specific enough to violate Shackman. With respect to the emails, I think that the allegations are that certain individuals including the subject of these emails was given an opportunity that we know many other people were not given as well. He was afforded a second review. Apart from what the complaint itself says, do you have reason to think that any of the plaintiffs was rejected because of political affiliation or sponsorship? Yes, and it depends upon our definition of political affiliation and sponsorship and again, I think it's important to draw a distinction between. This is different than the Shackman case in 1972 with the political machine. This political refers to essentially governmental and if somebody is anti-government. And what we have in this situation in our case is we have an individual who is in charge of the Department of Human Resources for the Chicago Police Department that decided and made efforts to create a police department based upon what she believed was a proper governmental police department. And if we look at it from that perspective, we can't look at it from the the old daily Democrats standard because that doesn't apply anymore. Shackman essentially eliminated that. But if we extend it to political and again, it's important to talk about the Accord talks about not just a political party, but it talks about the public policy. And that is essentially where Judge Kendall found that the Slowick case, there was questions regarding his political affiliation. Well, could it have been legitimate, for instance, to ask Mr. Slowick about his combat experiences and his views on war given that he was being interviewed for a law enforcement job? There's various stages of the employment process and those questions may be appropriate at some stages, but they're certainly not appropriate at all stages. And in this case, they were asked about the, they were asked in the psychological phase. That is really, forgive me, but I You can ask it the first time you meet him, but not the third time. What are you trying to say? Well, there's various steps and one of them is a drug test. And if somebody were to ask somebody about their political views or their views on war or combat at a drug test, that certainly wouldn't be the situation in which that would be called for. So that would be bad? Yes, I would think so. That would be bad. Okay, so when would it be good to ask about views on war and combat? I don't think it would be good in any situation. Really? To be quite honest, because that's, what is the relevance of somebody's view on war? Only everything. I like to get out on the battlefield and shoot every, one I view as the enemy that that's my idea of good combat. But again, there is a psychological test that's in place here and there's an important aspect that we're missing here is that we know, even without being given the opportunity to conduct discovery, we know that individuals took the psychological test, passed the psychological test, and were disqualified based upon the results at the psychological test. We know that. How could you pass a psychological test? That's a very good question because, okay, what the city's position is that there's an outside agency that conducts these psychological tests, which there is. The city maintained from the beginning that they had nothing to do with the psychological test or the results. Everything was, that was the other company, CAPFS, and they would make the determination pass or fail. But we know that that's not true. They can't, and I believe the city has even acknowledged it, the only, the CAPFS, the psychological testing company, can only provide a recommendation. Yes or no. So for the city to indicate that when somebody receives a no, that... Or based on the psychological test, there may be a problem in the future. Correct. Correct, and that's an important standard, but I think that it's equally important to know that we know that individuals passed that psychological test. Well, you can't pass a psychological test. You're right. You take a psychological test and then they evaluate it. You're right. Bad choice of words. We know that individuals took the psychological test, were told that there was no indication or any factors that would warrant dismissal of this individual, and those individuals were in fact dismissed for the very test that claimed... You mean they were not hired, not dismissed. They were disqualified based upon the psychological test, the test in which found that there was no violations or no indications that they would be threats of violence or anything along those lines. By the way, did you even mention the CAPPS-LEPS joint venture in your opening brief? We did not, Your Honor. Well then, I'm not sure then why any claim against that defendant hasn't been waived. Okay, the only argument we would make there is that... Why hasn't it been waived? Is that because it's incorporated into our conspiracy claim with the city regarding the Shackman, but we're making that argument recognizing the fact that we did not raise the issue in our opening brief. But we clearly maintain that that the psychological test was used as a tool to discriminate against individuals for reasons that were not part of the hiring process, should not be part of the hiring process, and simply were arbitrary decisions that were made by an individual that that made them based upon her view of government and what it should be. And that right there satisfies the the political aspect of Shackman, even if we look at it in the narrow context, which we ask that it...  Mr. Breyer? Hi. How are you dividing this up? I'm taking the first 15 minutes and... Right, but the issues, how are you? Oh, just I'm addressing the issues solely relating to the city and Representative CEPFS is addressing Okay, any anything that's left as to them. Clean up hitters, so to speak. I think that I think that's a fair analogy. But may it please the court and and happy New Year to all of you as well. Thank you. This court should affirm the judgment of the of the district court. The point of central premise in this entire suit is that by incorporating the hiring plan into the Shackman Accord when it was entered, that the city is now bound to be hailed into court for contempt proceedings if any violation of the terms of that hiring plan can be shown. That premise simply fails in the face of the plain language of the Shackman Accord itself, which is, as Judge Rovner observed, draws a very distinct line between the Shackman plaintiffs themselves who are given essentially audit and enforcement I would say authority to bring claims regarding the hiring plan and then everybody else, everybody that's not a Shackman plaintiff who can bring only claims involving political discrimination. And as counsel conceded during his opening statements, except for possibly Mr. Slowick, there are simply no allegations of any kind in this complaint involving political discrimination. Instead it's it's complaints that individual was aged out, that he turned 40 and wasn't allowed to proceed with the hiring process or failed a psychological screening. But none of that has any any relation whatsoever to political discrimination of the kind at issue in Shackman. Why are these mentions of so-called improper hiring criteria in the Accord if, as you argue, they are really beyond the scope of the Shackman litigation? In other words, why would even the Shackman plaintiffs have the right to complain about such generically irrelevant hiring criteria? Sorry, David. Yeah. After, on this court's remand in I believe it was Shackman 3, the numbers start to get a little blurred, unfortunately, due to the long history of litigation. But this court's referenced its en banc decision in Evans, and there may be concerns of whether the Shackman plaintiffs themselves under Evans properly have that authority, whether that raises concerns of enforcement. Fortunately, those concerns aren't present here, except to the extent that, but where these plaintiffs attempt to do what the Accord says the Shackman plaintiffs, what the Accord says the Shackman plaintiffs could do if they so chose, they they fall headlong into those enforcement concerns raised in Evans, that they want to bring claims entirely divorced from the very reason for the Shackman litigation itself, which is political discrimination. Well, look, if we accept the plaintiff's various factual accounts as true, as we have to at this stage, there do seem to be some irregularities in the city's plaintiffs, who are being told encouraging things at their psychological examinations, and then they're later being told that they failed those examinations. Doesn't this suggest that the examinations may be being used as a pretext? I don't believe so, but first, just to clarify, the complaint doesn't, if I understand, I believe you're referring to the questions about where an individual is told you're perfect. Maybe I should have saved that for, you know, your cleanup hitter. But there's nothing that indicates that there is a political motive, a political motivation, because there's nothing indicating the city or anybody any, in any sense, affiliate with the city knew of any political, any political activity, any political affiliation, anything that could possibly be considered a political act or political status. There's just simply no allegation of any knowledge of that. Well, what about the case of this individual who the Congressman and Alderman wrote about, you know, asked the status of, and then got a second viewing, so to speak, a second look. That does not seem to indicate any unlawful political discrimination. The Shackman Accord was quite clear that that political individuals are not walled off from the hiring process, that it's quite clear that they can have input in that process as long as it's not to push people through because of political affiliation, and that's definitely not shown by these emails. These emails, it was a candidate's mother contacted an alder person or a person, an alder person's staff. I'm not, it's not entirely clear on that regarding concern that, I believe it was her son, was disqualified because of military service, and then that, that would be of great concern to the city because military service is actually a preferred status under various, various policies, you know, city policies. I think it's even in the hiring plan itself that military status gets preferential treatment. So that would be disconcerting, and that was referred to the appropriate person in, in the hiring section of the city for review, and then that person, that candidate was sent for further review. But there is no indication that the, that the, that the alder person or any of these political individuals said, this individual has a preferred political affiliation, or we have a vested interest in this person's success. It was what I think a lot of people would hope from their city government, that if there was a concern of an irregularity, that they could go to their, they could go to their elected representative and say, I have concerns about how this is done. Could you please help me? That, that's what we expect from alder people, and I think that's exactly what we have here, not unlawful political discrimination. Talk about Mr. Slowick. Mr. Slowick, Mr. Slowick is, as, as we know in our brief, came the closest to alleging unlawful political discrimination, but even then he didn't, didn't get there. To start, he was asked about his views regarding war during what is likely the most appropriate point in the entire hiring process, the psychological screening. As, as Your Honor noted, there would be serious concerns about an individual who believed that war was a glorious pursuit, that killing your enemies was, was a noble cause, and something like that. That's very appropriate, or even more mundane things, such as PTSD. That's, that's important to find out. These individuals are gonna be on the street with guns, dealing with citizens, dealing with high-stress situations every day. So to say a person was asked about, asked about their vague, it's a very vague statement in this complaint, their views and beliefs and perceptions regarding war and combat, that seems particularly appropriate in that context to find out what Mr. Slowick would be like when entrusted with a weapon on the streets of the city of Chicago. And even setting that, that problem, that initial problem aside, there's no evidence of causation. There's nothing to show that whatever he said, and it's completely unknown, at least as far as the complaint goes, what was said by Mr. Slowick in response to that question. He doesn't say he gave an answer that implicated his political beliefs, that he criticized the Democrats or the Republicans or anybody else. It's, it's completely left to this court's imagination. And then there's nothing to connect that to why he would be disqualified based on what he was said. There's just a giant gap here regarding Mr., Mr. Slowick, aside from the fact that he was asked a question that was entirely appropriate in the context it was asked. And regardless, Mr. Slowick, as we note in our brief, he had a chance to file a complaint in state court. He could have raised these claims, raised any claims of political discrimination in that state court complaint, but he did not. Instead, he chose to voluntarily dismiss with prejudice. There's no dispute that, that res judicata, that the elements of res judicata applies to that dismissal under Illinois law. The only allegation is that there is no state court jurisdiction and that there is acquiescence, that the two, the two of the state law exceptions to res judicata apply. But neither of those exceptions apply here. The city clearly did not acquiesce to the filing of another claim. The city immediately objected at the filing of the state court claim, saying there is another action pending. We, we filed a, it's somewhat separate from res judicata, but it's alleging that there's a claim requesting dismissal on that ground. And when the, when the state court suit was dismissed, the city immediately raised res judicata as a defense. That's clearly not anything but acquiescence. And as to the jurisdictional exception, it's said a lot of the state courts have broad jurisdiction to consider even federal claims, such as the, such as the Shackman, claims under the Shackman Accord. In fact, Mr. Slowick initially brought this claim as a state, brought this claim in state court. So it's very hard for him to say that he could not have done that when that was his venue of choice from the outset when he filed this action. So can you address the second bite argument that counsel made that they didn't have, the plaintiffs didn't really real, didn't get an opportunity for a second review? That doesn't seem to be anywhere addressed in their brief, so I'll address it the best I can. That still doesn't have anything, doesn't show any political discrimination at best, and at absolute best, it shows that maybe there was some failure of the hiring process. But again, that's not what Shackman's about. That's not about enfor, you know, under Evans particularly shouldn't be, about enforcement of the details of, of the hiring process day-to-day, catching inadvertent, you know, not posting a job, not properly filing the appropriate paperwork to begin a job vacancy search, or to post, you know, to have the right interviewers in every single, in every single session. It's just not about that. That's far beyond what Shackman ever contemplated. And whatever in propriety the plaintiffs are now alleging for the first time regarding this second bite of the apple, the second review, a second hearing, that they've given nothing to say that they didn't get that because of political discrimination. As far as their complaints concerned, it could have been any reason. It could have been a slip-up. There could have been an exception that's not known about to when you, what sort of reviews are allowed. For instance, my understanding is that psychological screenings, there aren't, that those reviews aren't allowed. The secondary review, I believe that's in their complaint that they weren't allowed to see the results of the polygraph screening. I said psychological screening, I meant the polygraph. That a review wasn't allowed of that because of some issues of state law. Thank you very much. If this court has no further questions, we respectfully request that you affirm. Ms. Tesmer. Yes, good morning. Good morning. May it please the court, my name is Tricia Tesmer on behalf of the Defendant Center for Applied Psychology and Forensic Studies Limited, which is also a member of the CAPS-LEPS joint venture. I asked this court to dismiss CAPS, I'll call it CAPS for, thank you, brevity, from this appeal due to plaintiff's waiver in failing to identify any issues against this defendant in his opening appellant brief and as conceded in this oral argument. In the alternative, I'd ask this court to affirm the district court's decision dismissing CAPS. In regards to waiver, there's nothing in plaintiff's opening brief to address my client. Plaintiff has conceded that fact. The only count that was pled against my client was count three, a conspiracy claim, which plaintiff has conceded in his brief, both the opening brief and his reply brief, that he doesn't intend to brief. The only issue here is the Shackman claim, which was not alleged against this defendant. A failure to cite any authority or make any arguments is a waiver and plaintiff has waived any argument. If this court should find that count one, Shackman, somehow applies to this defendant, I again argue that plaintiff has waived that argument in failing to argue anything in regards to Shackman in his opening brief as to my defendant. The Shackman Accord talks about city employees. We are not a city employee. Plaintiff's count one, paragraph 38g, says the city failed to oversee the outside testing administrator. I find it hard that we could conspire, that we could be directed, that we could be controlled by the city of Chicago if the allegation is that the city failed to oversee us. There's nothing in Shackman that should bind CAPS as an agent or someone under the direction and control of the city. I don't know if you have any questions in this regard. So for the reasons stated by our briefs, by the city of Chicago, the Shackman count one should be dismissed as against all defendants because plaintiff's counts should be barred by the statute of limitations. The issues as to CAPS pertain to Matthew Bonstetter, Peter Slowick, and David Gouthier as only and race judicata applies to Slowick as the city has claimed. Therefore, I ask this court to dismiss this appeal against my client due to plaintiff's waiver and or affirm the district court's decision. Thank you. Thank you. Thank you. Thank you. It's important to note that with respect to the plaintiff, Slowick, the statements that he was asked questions about war, war in general, that's not correct. As the complaint alleges, the complaint or the questions asked were to Slowick about this war, this particular war. Certainly, it can be inferred that there was a political inference based upon those types of question. And obviously, because of brought by whatever certain administrations, and again, it's important to note that we were dismissed based upon 12b-6 and you know, it's certainly we believe that it's reasonable to show when it's looked at in the light most favorable to us that there were political influences going on here. And with pollsters that call people up to find out their political views, they don't call people up and ask them, are you Democrat? Are you Republican? What they do is they do exactly what the city did, was they start asking questions about individuals to give them a profile of what that individual's likely political views are. That's what was done in this case. Well, it was asked about their veteran status. It was asked... That has to do with a political background? Veteran status? Sure. You don't think veterans come from both parties? I do, but I think that I know that... Are you a socialist? Sure. I know that pollsters view individuals that were involved in combat, depending on which war it was, they view their political views a certain way. Mine was World War II, but go ahead. Sure. When they asked about minority candidates and as far as any relatives in prison or filing domestic complaints against other family members or friends, being involved in gangs, asking if they're receiving child support, those are the questions that were asked by our clients in this case, the plaintiffs, and they certainly don't have any rational basis to determine whether or not these individuals possess the skills to be police officers, so it could certainly be inferred that it's done in a way to categorize somebody into their political views. Violent domestic problems? Not violent as far as if they've ever been a victim of domestic violence. And just in closing, the Shackman Monitor recognized that the city of Chicago's discriminatory practices required that there be a light shed upon the hiring practices, so the Shackman Monitor expanded the Shackman Accord specifically for the reasons that bring us here today, the improper considerations, and I would just say in closing that if the city is allowed to continue conducting the examinations in the way in which they do without any transparency, they can disqualify any person that they want and their discriminatory reasons for the disqualification will never come to light because of the fact that they arbitrarily decide not to release the results of the alleged failing of the psychological test or the alleged failing of the polygraph test. That fact alone, I would hope, would influence this court to recognize that the city is not complying with the Shackman Accord, the Shackman Monitor's recommendation, and they are simply allowed to discriminate at will based upon the current practice. Thank you very much to all, and the case will be taken under advice. Thank you.